## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM METZGER and IBB, LLC,

*Plaintiffs,*

vs.

IDLE SMART, INC.,

*Defendant.*

Case No. 2:22-cv-02043-EFM

## MEMORANDUM AND ORDER

Before the Court is Defendant Idle Smart, Inc. ("Idle Smart")'s Motion to Dismiss Count III of Plaintiffs William Metzger's and IBB, LLC's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Count III of Plaintiffs' Complaint asserts a breach of contract and breach of good faith and fair dealing. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion.

## I.       Factual and Procedural Background[1]

### A.       Background facts.

Plaintiffs' claim for breach of duty of good faith and fair dealing arises out of the License and Assignment Agreement (the "Agreement"), which the parties entered into on July 25, 2012. In 2005, Metzger developed a system, the Idle Smart Unit, to control the cabin temperature of trucks, thus saving fuel, battery power, and extending the life of the truck's engine.  On April 11, 2006, the U.S. Patent and Trademark Office issued a patent (the "Patent") to Metzger for the Idle Smart Unit's technology.  The expiration date for his Patent is January 3, 2025.

On July 25, 2012, Metzger entered into the Agreement with Idle Smart to license the use of Metzger's Patent.  The Agreement assigned the Patent to Idle Smart, who in turn agreed to compensate both Metzger and IBB through royalty payment for the sale of any Idle Smart products that incorporated the Idle Smart Unit's technology.

### B.       The facts and allegations underlying Count III in the Plaintiffs' Complaint

On January 31, 2022, the Plaintiffs filed their Complaint, amending it twice since then.  As it stands before the Court, the Second Amended Complaint alleges four counts: Count I is a breach of contract claim based on express breach as to Metzger; Count II is a breach of contract claim as to third party beneficiary and co-plaintiff IBB; Count III is a breach of contract claim based on breach of implied duty of good faith and fair dealing; and Count IV is for declaratory judgment.

In support of Court Three, Plaintiffs allege that the good faith and fair dealing spirit of the Agreement has been violated in six ways:

---

[1] The facts are taken from the allegations within Plaintiffs' Complaint and are considered true for the purposes of this order.

(1) Defendant did not use reasonable efforts to market and promote the Idle Smart Unit within the useful life of the Patent.

(2) Defendant did not offer and sell the Idle Smart Unit at a price point that reflects the reasonable fair market value of the Idle Smart Unit and is suitable to reach the aggregate total of royalties due to Plaintiffs.

(3) Defendant did not adequately protect the Patent rights as against others who may unlawfully trade on the Patent rights, namely the attempts of Idle Smart's President Jeff Lynch to patent a process without proper attribution to Metzger.

(4) Defendant did not adequately protect the Patent rights by development of products including the use of the Patent and Technology, including the failure of Idle Smart and President Jeff Lynch to properly attribute Metzger regarding Lynch's patent.

(5) Defendant did not develop, maintain, and provide sufficient royalty statements to adequately apprise Metzger of his rights and amounts of royalty payments due to Metzger and IBB.

(6) Defendant did not cooperate in the audit process afforded Metzger under the terms of the Agreement.

First, Plaintiffs allege the Agreement vested Idle Smart with sole discretion in marketing, promoting, and selling products incorporating the Idle Smart Unit technology, so that Idle Smart was obligated to do so in conformance with normal business practice.  On that topic, the Agreement reads:

> 2.4 Idle Smart Rights. The parties acknowledge and agree that all business decisions including, *without limitation*, decisions relating to Idle Smart's research, development, regulatory strategy, registration, manufacture, sale, commercialization, design, price, distribution, marketing and promotion of the Product in the Territory, *shall be within the sole discretion of Idle Smart.*  Nothing in this Agreement shall be construed as restricting Idle Smart's business or imposing on Idle Smart the duty to market and/or sell and exploit of, or in preference to, any other product, or in any way other than in accordance with Idle Smart's normal commercial practices.[2]

---

[2] Emphasis Added.

As to the second basis for Count III, Plaintiffs allege that Defendant knew the Patent protections would expire in 2025, limiting the time Metzger could reasonably expect to receive the benefits from the Agreement with Defendant.  Defendant sought repeated extensions from Metzger, representing that Defendant intended to maximize profitability of the sales.  Plaintiffs allege Defendant's actions resulted in a decrease of the Patent's useful life.  Defendant allegedly sold products below market value and attempted to decrease the royalties owed to Plaintiffs through sales operations.   These actions were allegedly contradictory to Defendant's representations to Metzger that Defendant was working to reach the $3,000,000 contractual threshold.  According to Plaintiffs, Defendant attempted to allocate the sales price for the products at a rate that would have resulted in the sale of the Idle Smart units for a total of $5.00 each which is 0.2% of the retail price which Defendant had previously sold the same product.

As to the third and fourth issues, in contending that Defendant did not protect the Patent against others and did not develop products using the Patent and Metzger's technology, Plaintiffs allege Idle Smart's president Jeff Lynch notified Metzger that he had developed an improvement to the Patent in August 2016.  On the topic of infringement, the Agreement provides that "Idle Smart shall have the sole right but not the obligation, to enforce at its expense, the Patent."  In October 2015, Lynch submitted a separate patent registration application for battery voltage monitoring.  Plaintiffs allege that Lynch's improvement to the Idle Smart Unit included battery voltage monitoring technology based on Metzger's "No Operator" mode and improvements to the Idle Smart Unit.  Metzger's "No Operator" mode allows the driver to leave the cab of the truck when the outside temperature is below 40 degrees Fahrenheit while the Idle Smart Unit continues to monitor engine coolant, oil, fuel temperatures, and battery voltage.  This technology is an

elective add on Metzger made to the Idle Smart Unit that uses the same components and technology in the original unit.

Plaintiff alleges Lynch acknowledged the ways in which his patent relied on Metzger's "No Operator" mode. He also told Metzger that Idle Smart would not seek the patent if it impacted Metzger's willingness to amend the contract to reduce the royalty payments. Metzger permitted Lynch to continue with Lynch's patent process if Defendant would honor the Original Agreement's $3,000,000 threshold. On October 11, 2016, Lynch filed his patent application for an Engine Start Stop System Based on Program Battery Voltage Levels. Lynch failed to reference or cite to Metzger's Patent as supporting content in his application. Lynch's patent application was granted on April 3, 2018.

Fifth, Plaintiffs allege that Defendant did not adequately provide sufficient royalty statements. Plaintiffs allege in the Complaint that Defendant never sent the 2020 4th quarter royalty statement. Plaintiffs argue that Defendant's duty to adequately calculate the royalties due to Plaintiffs under the Agreement implies the regular distribution of royalty statements, as does Metzger's right to verify the royalty statements. The Agreement does not have explicit language detailing ongoing royalty statements. However, the only reference to a royalty statement in the Agreement is within the discussion of the audit rights:

> 5.6 Records; Audit Rights. Idle Smart shall keep full, true and accurate books of account containing all particulars that may be necessary for the purpose of showing the amounts payable to Metzger hereunder. Such books of account shall be kept at Idle Smart's principal place of business. Such books and the supporting data shall be retained for three (3) years following the end of the calendar year to which they pertain, and, upon reasonable advance written notice to Idle Smart, open to the inspection of Metzger or its agents for the sole purpose of verifying *Idle Smart's royalty statement*[3] or compliance in other respects with this Agreement and not

---

[3] Emphasis added.

prior to the sale of the first 24 units of the Products. Metzger can request auditing of such books and supporting data no more than once each calendar year. Any such audit shall be conducted at Metzger's sole expense and during the normal business hours of Idle Smart by an independent certified public accountant selected by Metzger that is reasonable acceptable to Idle Smart.

On January 8, 2021, after Metzger had elected to exercise his right under the Agreement to an audit, Lynch informed Metzger that Idle Smart had conducted its own internal audit and determined it had overpaid royalties by more than $180,000. Metzger requested all the documentation Defendant relied upon to determine the overpayment. Plaintiffs allege that Defendant never provided 2020 4th quarter royalty statement which would have allowed Plaintiffs to verify the 4th Quarter 2020 royalty payment. Furthermore, when Metzger received a wire transfer for the 1st Quarter 2021 royalty payment, no royalty statement accompanied it. Then, when Metzger requested the 1st quarter 2021 royalty statement, Lynch responded that the statement would not be provided. Metzger continued to receive wire transfers for royalty payments for the 2nd, 3rd, and 4th quarters of 2021 without accompanying royalty statements.

Finally, in support of the allegation that Defendant did not cooperate in the audit process, Plaintiffs allege Defendant failed to provide the documents necessary to account for the royalty payments. After Defendant failed to make on-time royalty payments, Metzger decided to request an audit of Defendant's records, as permitted by section 5.6 of the Agreement. When Metzger requested the audit, Lynch informed him that the audit would need to be held in Lenox, Massachusetts—Defendant's principal place of business. From September 2020 to November 2020, Defendant provided records to Metzger's chosen auditing firm. The only resistance from Defendant happened in January 2021 when the auditor requested Defendant's bank statements. Defendant indicated it would be willing to turn them over but requested that it be allowed to redact information prior to providing the records. Plaintiffs' Complaint does not explain how Metzger

responded to Defendant's redaction request.  However, the Complaint makes clear that Defendant did not turn over any redacted or unredacted bank statements to the auditor.  Plaintiffs contend that Defendant's President Jeff Lynch's refusal to produce bank records rendered the audit process incompletable.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[5]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[7]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[8]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then

---

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[8] *Iqbal*, 556 U.S. at 678–79.

[9] *See Id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[10]  "In applying this standard, we take Plaintiffs' well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences from the facts in favor of Plaintiffs."[11]

### III.    Analysis

Kansas law requires that "every contract impl[y] good faith and fair dealing between the parties to it, and a duty of co-operation on the part of both parties."[12]  Under Kansas law, the covenant of good faith and fair dealing is defined as "an implied undertaking in every contract on the part of each party that he will not intentionally and purposefully do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of another party to receive the fruits of the contract."[13]  In essence, "the law implies a counter promise against arbitrary or unreasonable conduct on the part of the promisee."[14]  However, "essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing."[15]  This is because

---

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[11] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir.), *cert. denied*, 142 S. Ct. 477 (2021).

[12] *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 965, 298 P.3d 250, 266 (2013) (further citations and quotations omitted).

[13] *Id.* (further citations and quotations omitted).

[14] *Id.* (further citations and quotations omitted).

[15] *Id.* (further citations and quotations omitted).

"the purpose of requiring good faith and fair dealing in contracts is to protect the reasonable expectations of the parties—not to rewrite contracts."[16]

The implied covenant of good faith and fair dealing becomes relevant when, "the parties to the contract realize detailed provisions on performance would be ineffectual, frustrating, or impractical."[17]   In practice, it forces parties to perform consistent with their intentions and expectations that are expressly or impliedly included in the terms of the agreement.[18]   Accordingly, to state a claim for breach of the covenant of good faith and fair dealing under Kansas law, the plaintiff must "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term."[19]   "Breach of the implied covenant of good faith and fair dealing is not a separate claim, but rather a 'legal argument related to a breach-of-contract claim.' "[20]   The covenant of good faith and fair dealing is applicable to all contract provisions and "is routinely implied when a particular contract provision is left open so as to allow one of the parties to invoke the provision at his discretion."[21]

To determine whether the covenant applies, courts have examined motive evidence to decide if the covenant was invoked within the good faith expectations of the parties.[22]   The issue

---

[16] *Pizza Hut, Inc. v. Koch Indus.*, 2001 WL 37132182, *8 (Kan. Ct. App. 2001) (citing *Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1155 (10th Cir. 1994)).

[17] *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1178 (D. Kan. 1990).

[18] *Id.* at 1179.

[19] *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (quoting *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)).

[20] *Steven Volkswagen, Inc. v. Zurich Am. Ins. Co.*, 2020 WL 2615764, at *7 (D. Kan. 2020) (quoting *Classico, LLC v. United Fire and Cas. Co.*, 386 P.3d 529, 2016 WL 7324451, at *5 (Kan. Ct. App. 2016).

[21] *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1267 (10th Cir. 1988).

[22] *Id.*

of whether the covenant of good faith and fair dealing has been violated is a question of fact.[23]

However, when the underlying facts are undisputed, the court may determine whether the implied

covenant of good faith and fair dealing has been violated.[24]

While the covenant of good faith and fair dealing is usually applicable to all contract

provisions, "it is possible to so draw a contract as to leave decisions absolutely to the uncontrolled

discretion of one of the parties and in such a case the issue of good faith is irrelevant."[25]  In finding

uncontrolled discretion, courts can consider the specific language within the contract.  In *Pizza

Hut, Inc. v. Koch Industries, Inc.*,[26] the Kansas Court of Appeals interpreted a contract term that

gave the buyer the "sole discretion" to terminate the contract.   The Court found the unmistakable

meaning of "sole discretion" was that the buyer "had a well-nigh unqualified right to cancel [the

contract]," and that the wording was "hard to misinterpret."[27]  The Court held that under the plain

language of the contract, "sole discretion" meant the buyer had "uncontrolled discretion."[28]

Therefore, the covenant of good faith and fair dealing did not apply to the contract term.[29]

---

[23] *Waste Connections*, 296 Kan. 943, 964, 298 P.3d 250, 265.

[24] *First Nat. Bank of Omaha v. Centennial Park, LLC*, 48 Kan. App. 2d 714, 730, 303 P.3d 705, 716 (Kan. Ct. App. 2013).

[25] *Big Horn Coal*, 852 F.2d 1259, 1267 (10th Cir. 1988) (quoting *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1153 (D.C. Cir. 1984).

[26] 2001 WL 37132182 (Kan. Ct. App. 2001).

[27] *Id.* at *6.

[28] *Id.* at *9.

[29] *Id.*

**A.    Defendant did not breach the covenant of good faith and fair dealing by failing to use reasonable efforts to market and promote the Idle Smart Unit and failing to offer and sell the Idle Smart Unit at a reasonable fair market value.**

Relying on the covenant of good faith and fair dealing, Plaintiffs assert that Defendant was required to use reasonable efforts to market and promote the Idle Smart Unit within the useful life of the Patent.  Plaintiffs also assert that Defendant was required to offer and sell the Idle Smart unit at a price that reflected the reasonable fair market value of the product and was suitable to reach the total Royalties due to Plaintiffs.  However, the Agreement gives Defendant the "sole discretion" "without limitation" to determine how to market and sell the Idle Smart Unit.

"Sole discretion" is the key phrase that the Kansas Court of Appeals analyzed to determine that the buyer was given uncontrolled discretion in *Pizza Hut*.  Because Defendant was granted the sole discretion without limitation in the Agreement, the Court concludes that Defendant ultimately had uncontrolled discretion to market and promote the Idle Smart Unit in accordance with Defendant's normal commercial practices.  The covenant of good faith and fair dealing does not apply to this contract term.

Similarly, because Defendant had uncontrolled discretion to price and sell the Idle Smart Unit, the covenant of good faith and fair dealing is not implicated.  Even if the covenant did apply, Defendant promoting and marketing the Idle Smart Unit within their normal commercial practices is not arbitrary or unreasonable conduct that would violate the covenant.

Accordingly, Defendant's Motion to Dismiss is granted as to these issues.

**B.    Defendant did not breach the covenant of good faith and fair dealing by failing to adequately protect the Patent rights against others who may unlawfully trade on the Patent and failing to protect the Patent rights by not developing products that rely on the Patent.**

In support of their third and fourth bases for Count III, Plaintiffs cite Lynch's patent that relied in part on Metzger's "No Operator" mode without proper attribution.  However, Plaintiffs'

Complaint demonstrates that Lynch obtained the Patent with Metzger's consent.  It states that Metzger agreed to allow Idle Smart to move forward with Lynch's Patent process if Idle Smart would honor the Agreement's $3,000,000 threshold.  Furthermore, Plaintiffs' Complaint indicates that Lynch told Metzger this fact.  Despite knowing this, Metzger still agreed to allow Lynch to pursue the patent.  The only stipulation Metzger made was that Defendant continue to honor the $3,000,000 threshold.  To now claim a violation of the covenant of good faith and fair dealing because Lynch did what Metzger agreed to allow him to do is nonsensical.  Furthermore, Plaintiffs fail to cite any legal basis or caselaw supporting their contention that failure to properly cite Metzger as an attributor on Lynch's patent was an act of bad faith.  The Court finds that this failure is insufficient to support a finding that Defendant violated the covenant of good faith and fair dealing in the patent application.

Furthermore, the Agreement does not expressly require that the Defendant develop new products using the technology of the Patent.  Plaintiffs assert that Defendant's representations made before finalizing and amending the Agreement gave rise to these expectations.  However, there is nothing within the Agreement that references or gives rise to these expectations.  To hold otherwise would be to allow the covenant of good faith and fair dealing to create a new contract term—a function it cannot perform. Therefore, the Court finds that the covenant of good faith and fair dealing has not been implicated.

Accordingly, Defendant's Motion to Dismiss is granted as to these issues.

**C.      Plaintiffs' complaint plausibly alleges breach the covenant of good faith and fair dealing by Defendant failing to provide royalty statements to Plaintiffs.**

Plaintiffs allege that under the terms of the Agreement, Defendant was required to provide royalty statements to Metzger and failing to do so implicated the covenant of good faith and fair

dealing.  Defendant argues that one singular reference to a royalty statement does not indicate that the term of the Agreement was intended to require Defendant to provide regular, ongoing royalty statements to Plaintiff.  Instead, it argues this term of the Agreement was intended to impose on Defendant a duty to pay royalties to Metzger.  However, the Court is not convinced that the mention of "royalty statement" in this term was intended to refer to only one royalty statement.

The context of Section 5.6 of the Agreement indicates that Defendant was required to provide some type of statement to Metzger explaining Defendant's royalty payments.  The term clearly indicates that Metzger would be able to request an audit once a calendar year to inspect Defendant's books of account and verify the royalty statement provided to Metzger.  By not providing Metzger with a royalty statement along with the royalty payments, Metzger was unable to determine if the royalty payments Defendant made were proper.  Furthermore, without a royalty statement, there would not be any documentation for Metzger to verify during an audit process. In other words, without a royalty statement accompanying the payments, the provision authorizing Metzger to request audits would become meaningless.

Thus, the Court finds that the duty of good faith and fair dealing has been implicated by the alleged facts in Plaintiff's Complaint, and Plaintiffs have plausibly alleged its breach. Accordingly, Defendant's Motion to Dismiss is denied as to this issue.

**D.  Plaintiffs' complaint plausibly alleges breach of the covenant of good faith and fair dealing by Defendant failing to cooperate in the audit process.**

While Plaintiffs' Complaint demonstrates that Defendant mostly complied with the audit request, Plaintiffs cite Defendant's failure to produce its bank records as the breach of good faith and fair dealing in the audit request.  Plaintiffs allege that Lynch's refusal to produce bank records rendered the audit request meaningless and made it impossible for Plaintiffs to determine if

-13-

Defendant had overpaid royalties to Metzger by more than $180,000.  Furthermore, Plaintiffs allege Defendant admitted to misrepresentations made to Metzger by Lynch who intended to delay payments due to Plaintiffs.  In Plaintiffs' minds, the refusal to produce requested bank records, unless they were redated, to the independent auditor breached the covenant of good faith and fair dealing.

Defendant contends that it did cooperate in the audit process.  While Plaintiffs' Complaint does detail some cooperation from Defendant, the Complaint also alleges that Defendant stopped cooperating with the audit process when Defendant refused to turn over unredacted bank records. The Plaintiffs' Complaint does not explain how Metzger responded, or if indeed he responded at all, to Defendant's redaction request.  Therefore, the Court does not have the completed facts. However, as this is Defendant's motion to dismiss, all reasonable inferences must be drawn in favor of the Plaintiffs.  The reasonable inference the Court must draw is that because Defendant did not provide the bank statement, even though the Defendant was obligated to, Plaintiffs were unable to complete the audit process.  Therefore, the Court must conclude that Plaintiffs plausibly allege that Defendant did not comply with the covenant of good faith and fair dealing during the audit process.

Accordingly, Defendant's motion to dismiss is denied as to this issue.

In sum, all bases for Count III are dismissed except as to the royalty statement and audit process cooperation issues.

**IT IS THEREFORE ORDERED** that Defendant's (Doc. 36) is **GRANTED in part** and **DENIED in part.**

**IT IS SO ORDERED.**

Dated this 15th day of May, 2023.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE